UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAPLE CREEK COMMONS HOMEOWNERS ASSOCIATION, | ) ) ) |
| Plaintiff, | ) |
| vs. | ) NO. 1:08-cv-00475-TWP-MJD ) |
| STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) |

## Entry on Motion to Compel

This matter comes before the Court on Plaintiff Maple Creek Commons Homeowners Association's Motion to Compel Defendant State Farm Fire and Casualty's production of the Indiana Department of Insurance's report of market conduct examination. [Dkt. 87]. For the reasons discussed below, the Court **GRANTS** Maple Creek's Motion.

## I. Background

On April 14, 2006, large hail-producing storms swept through central Indiana. This case involves the extent of the hail damage to the roofs of the Maple Creek condominium units and the amount, if any, State Farm is required to pay under the insurance policy.

Presently at issue is the production of the Indiana Department of Insurance's (IDOI) draft "Report of Market Conduct Examination of State Farm and Casualty Company Concerning Claims Practices Implemented Relating to the April 2006 Hail Storms in Indiana" ("Draft Report"). The IDOI Commissioner never adopted the Draft Report; instead, the Commissioner

1

entered into a settlement agreement with State Farm in lieu of issuing a final report. Without going into detail, the Draft Report lists significant concerns regarding State Farm's handling of claims relating to the 2006 hailstorms.

On September 26, 2011, Maple Creek served State Farm with a second request for production of documents expressly seeking production of the Draft Report. State Farm refused to produce the Draft Report in response to that request.

State Farm had previously produced the Draft Report to Maple Creek's counsel in a different case pending in state court as being responsive to a request for documents related to State Farm's media response to the hailstorm. However, the Draft Report produced in that case was subject to a protective order preventing its use in other matters, such as the present case.

## II. Discussion

Federal Rule of Civil Procedure 26 allows for broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In the discovery context, relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Under Rule 37, if a party refuses to respond to a discovery request, then the opposing party may move for an order to compel disclosure. Fed. R. Civ. P. 37(a). The objecting party has the burden to show why a particular request is improper and must do more than merely invoke the "often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of

admissible evidence." *Great Am. Ins. Co. v. Architectural Material, Inc.,* No. 4:11 cv 20, 2011 WL 4688831, at *2 (N.D. Ind. Oct. 4, 2011) (citations omitted).

In resolving the issue before it, this Court will first determine whether Indiana law precludes discovery of the Draft Report. Next, the Court will address whether the Draft Report is relevant to a claim or defense in this matter under Rule 26.

## A. Discoverability Of The Draft Report Under Indiana Law

In opposing the Motion to Compel, State Farm primarily argues that the Draft Report is confidential and privileged under Indiana law and thus not subject to discovery. [Dkt. 102 at 10]. State Farm further contends that principles of comity dictate that documents identified as confidential under state law are not subject to discovery in this Court. [*Id.*]. The Court concludes that Indiana law allows for discovery of the Draft Report because (i) Indiana law allows State Farm to disclose the Draft Report, (ii) the Draft Report is not being made public, (iii) Indiana law does not limit the Court's authority to order the Draft Report to be produced, (iv) the IDOI Commissioner's decision not to adopt a final report does not preclude State Farm from disclosing the Draft Report, and (v) by previously producing the Draft Report, State Farm conceded that courts have the authority to order the Draft Report produced.

### i. Indiana Law Allows State Farm To Disclose The Draft Report

In arguing that Indiana has declared the Draft Report confidential and privileged, State Farm cites to Indiana Code section 27-1-3.1-15, which states in relevant part:

> All working papers, recorded information, documents, and copies thereof produced by, obtained by, or disclosed to the commissioner or any other person in the course of an examination under this chapter (including trade secrets and information obtained from a federal agency, a foreign country, or the National Association of Insurance Commissioners, or under another state law) are confidential for the purposes of IC 5-14-3-4, are not subject to subpoena, and may not be made public by the commissioner or any other person, except to the extent provided in section 14 of this chapter.

Ind. Code Ann. § 27-1-3.1-15 (LexisNexis 2011).  According to State Farm, section 14 provides the only way to make the Draft Report public.  Section 14 states in relevant part:

> (a) Upon the adoption of an examination report under section 11(a)(1) of this chapter, the commissioner shall continue to hold the content of the examination report as confidential information for a period of thirty (30) days except to the extent provided in section 10(b) of this chapter. Thereafter, the report shall be open for public inspection.

§ 27-1-3.1-14(a).  Maple Creek does not dispute that Indiana makes the Draft Report confidential; however, Maple Creek contends that sections 27-1-3.1-14 and 15 apply to the IDOI Commissioner only.  [Dkt. 89 Ex. 1 at 14].

Section 27-1-3.1-15 prevents the Commissioner or "any other person" from making the documents or information public.  The Code defines person as "any individual, aggregation of individuals, trust, association, partnership, limited liability company, or corporation, or any affiliate of these entities."  § 27-1-3.1-7.  Thus, "any other person" could be read to include State Farm.

However, section 27-1-3-11(b) excludes State Farm from the confidentiality requirement in 27-1-3.1-15.  Section 27-1-3-11(b) allows the company subject to an examination to publish the facts contained in that examination.  § 27-1-3-11(b).   As Maple Creek contends, under section 27-1-3-11(b), State Farm may freely disclose the facts in the Draft Report.  [Dkt. 89 Ex. 1 at 15]. State Farm makes no argument to the contrary.  Thus, Indiana law does not preclude State Farm from producing the Draft Report.

## ii. The Draft Report Is Not Being Made Public

Even if section 27-1-3.1-15's confidentiality requirement did include State Farm, Indiana law does not preclude discovery because the Draft Report is not being made public.  Under section 27-1-3.1-15, the Draft Report "may not be made public."  The Indiana Code does not define the

word public but "[w]ords of a statute should be given their plain, ordinary and usual meaning…." *Gallagher v. Marion Cnty. Victim Advocate Program, Inc.,* 401 N.E.2d 1362, 1364 (Ind. Ct. App. 1980) (citations omitted). As commonly used, public means "exposed to general view." Merriam-Webster's Collegiate Dictionary (11th ed. 2009). Using this definition of public, section 27-1-3.1-15 proscribes the Commissioner or any other person from exposing to general view "working papers, recorded information, documents, and copies thereof …." § 27-1-3.1-15. Here, State Farm would not be exposing the Draft Report to general view because a previously issued protective order will limit access to the Draft Report. Thus, State Farm's production of the Draft Report would not make the Draft Report public under section 27-1-3.1-15.

### iii. Section 27-1-3.1-15 Does Not Limit The Court's Authority To Order Production

Section 27-1-3.1-15 makes the Draft Report "not subject to subpoena," but does not foreclose its discoverability pursuant to a court order. A subpoena is the equivalent of a court order. *See Miller v. St. John's Health System, Inc.,* No. 1:10-cv-01685-SEB-MJD, 2011 WL 3890315, at *2 (S.D. Ind July 29, 2011). By including the phrase "not subject to subpoena," section 27-1-3.1-15 calls into question the discoverability of the Draft Report and this Court's authority to order its production.

Examining other Indiana statutes that use this phrase, however, leads this Court to conclude that the General Assembly did not intend to limit the authority of courts to order production of documents like the Draft Report during discovery. For example, in section 27-1-15.6-15 documents and material obtained by the Commissioner in an investigation under this section "are confidential by law and privileged, are not subject to public inspection and copying under section 5-14-3-3, are not subject to subpoena, and are not subject to discovery or admissible in evidence

5

in any private civil action." § 27-1-15.6-15(e)(1). Likewise, in section 27-13-31-3 "information considered by a health care review committee and the record of the actions and proceedings of the committee are confidential for purposes of IC 5-14-3-4 and not subject to subpoena or order to produce …." § 27-13-31-3(a).

This Court "'must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Bruce v. Grieger's Motor Sales*, 422 F. Supp. 2d 988, 921 (N.D. Ind. 2006) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *see also Howser Dev. LLC v. Vienna Twp. Assessor*, 833 N.E.2d 1108, 1111 (Ind. T.C. 2005). The General Assembly made the Draft Report "not subject to subpoena;" however, unlike other documents protected from disclosure under Title 27, the General Assembly chose not to include language making the Draft Report undiscoverable, privileged, or beyond the reach of a court order.

In 2011, the General Assembly amended section 27-1-3.1-15, but again chose not to add such language. This Court presumes this was intentional. As such, section 27-1-3.1-15 does not limit this Court's authority to order the Draft Report produced. Nor, in so doing, would the Court violate any principles of comity because the Draft Report is not being made public and section 27-1-3.1-15 allows this Court to order the Draft Report produced during discovery.

Other sections of the Indiana Code bolster this position. For example, section 27-1-3-11 prevents the Commissioner or any other person from disclosing information concerning the affairs of an insurance company obtained through an examination conducted under section 27-1-3.1 unless, among other reasons, in compliance with a court order. § 27-1-3-11(a). Moreover, as previously discussed, section 27-1-3-11(b) allows State Farm to publish the facts contained in its own examination. It would defy logic to interpret the statute to allow State Farm to disclose the facts in the Draft Report, but not allow this Court to order State Farm to produce the Draft

6

Report.  Thus, while section 27-1-3.1-15 makes the Draft Report "not subject to subpoena," the statute does not preclude this Court's ability to order State Farm to produce it.

**iv. The Commissioner's Discretion Does Not Prevent State Farm's Disclosure**

Additionally, State Farm implies that, because the Commissioner declined to exercise the discretion provided in section 27-1-3.1-14(a) to disclose the Draft Report, no one else, including State Farm, may disclose the Draft Report. [Dkt. 102 at 10].  The Court disagrees.

Under the Court's reading, disclosure is mandatory if section 27-1-3.1-14(a) applies.  As noted, section 27-1-3.1-15 prevents the Commissioner or any other person, other than State Farm, from disclosing confidential information except as provided in section 14.  Section 27-1-3.1-14(a) applies "[u]pon the adoption of an examination report under section 11(a)(1)."  In turn, section 27-1-3.1-11 provides:

> (a) Within thirty (30) days after the end of the period allowed for the receipt of written submissions or rebuttals, the commissioner shall fully consider and review the report, together with any written submissions or rebuttals and any relevant portions of the examiner's workpapers, and enter an order:
>   (1) adopting the examination report as filed or with modification or corrections;
>   (2) rejecting the examination report with directions to the examiners to reopen the examination for purposes of obtaining additional data, documentation or information, and refiling the report under this chapter; or
>   (3) calling for an investigatory hearing with no less than twenty (20) days notice to the company for purposes of obtaining additional documentation, data, information and testimony.

§ 27-1-3.1-11(a).

The Commissioner took none of the above actions; instead, the Commissioner entered into an agreement with State Farm "in lieu of issuance of a final report and entrance of official findings of the Examination…." [Dkt. 97 Ex. 1 at 2].  In the Final Order, the Commissioner "approv[ed] and adopt[ed] the Agreement as a resolution of the examination." [Dkt. 97 Ex. 2 at 1].  While the Commissioner might have discretion to decide whether to adopt an examination report, once

adopted, section 27-1-3.1-14(a) requires the report be made open for public inspection after thirty days.

Because the Commissioner decided not to adopt the Draft Report, under one interpretation,[1] the Commissioner could not disclose the Draft Report because the Commissioner never adopted it, thus not triggering section 27-1-3.1-14(a). The Commissioner appears to have taken this approach in response to Maple Creek's request for the disclosure of the Draft Report stating "Because no examination report has been adopted, Indiana Code § 27-1-3.1-14(a) is inapplicable."[2] [Dkt. 97 Ex. 6 at 2].

The Commissioner's decision not to adopt the Draft Report, however, does not preclude State Farm from producing the Draft Report because section 27-1-3-11(b) allows State Farm to disclose the facts contained in its examination. Nor does the Commissioner's decision change the fact that the Draft Report is not being made public under section 27-1-3.1-15. Lastly, the Commissioner's decision has no effect on this Court's authority to order the Draft Report produced.

---

[1] While neither party makes the argument, it is worth noting that an alternative interpretation could require the Commissioner to make the Draft Report open for inspection. Because the agreement is "in lieu of" issuance of a final report, the agreement effectively satisfies the adoption of the final report requirement in section 27-1-3.1-11, thereby making section 27-1-3.1-14(a) applicable. As commonly used, the phrase "in lieu of" means "in the place of." Merriam-Webster's Collegiate Dictionary (11th ed. 2009). Therefore, the agreement stands in the place of an order under section 27-1-3.1-11(a)(1) adopting the examination report. Under section 27-1-3.1-14(a), upon adoption of the examination report, or as is the case here, the adoption of the agreement in lieu of adopting the report, "the commissioner shall continue to hold the content of the examination report as confidential information for a period of thirty (30) days. Thereafter, the report shall be open for public inspection." § 27-1-3.1-14(a). The Final Order was issued on May 20, 2009, so thirty-one days thereafter the Commissioner was required to open the content of the examination report for public inspection. At a minimum, the agreement, in lieu of an adopted report, should be open for public inspection.

[2] Even if section 27-1-3.1-14(a) is inapplicable, the agreement itself could govern State Farm's disclosure of the Draft Report. The agreement includes no provision preventing State Farm from disclosing the Draft Report. Suffice it to say, regardless of the applicability of section 27-1-3.1-14(a), the Court finds nothing in either the statutory language or the agreement that prevents the Court from ordering State Farm to produce the Draft Report.

**v. State Farm Previously Produced The Document Pursuant To A Court Order**

Maple Creek contends that State Farm's decision to produce the document to Maple Creek's counsel in the context of another case contradicts its position in this Court. [Dkt. 89 Ex. 1 at 16]. In response, State Farm contends that it involuntarily produced the Draft Report only upon a court order and subject to a protective order. [Dkt. 102 at 6]. Yet, State Farm produced the Draft Report without challenging the state court's authority; nor did State Farm argue that state law prohibited it from producing the Draft Report. Having already produced the Draft Report pursuant to a court order, this Court finds that State Farm conceded that a court has such authority and cannot now argue otherwise. To conclude otherwise would allow State Farm to pick and choose with which court's orders to produce the Draft Report it would comply and which court's orders it would oppose.

**B. Relevance Of The Report**

Having concluded that Indiana law does not prevent this Court from ordering State Farm to produce the Draft Report, the Court now turns to whether it, in fact, should order the Draft Report to be produced. Maple Creek argues that the Draft Report is relevant to its bad faith claim. [Dkt. 89 Ex. 1 at 20]. State Farm argues that Maple Creek has the Draft Report already so the Court should focus on whether the Draft Report is evidence under Federal Rule of Civil Procedure 56. [Dkt. 102 at 9].

Admittedly, this is a unique situation in that Maple Creek's counsel possesses the Draft Report, but a protective order governs the use of the Draft Report preventing Maple Creek's counsel from using the Draft Report for any purposes other than the state court litigation. [Dkt. 90 Ex. 6]. State Farm's own brief acknowledges that "protective orders limit the spillover effects of disclosing sensitive information.'" [Dkt. 102 at 13 (quoting *Mohawk Indus. Inc. v.*

*Carpenter*, 130 S. Ct. 599, 608 (2009)]. Maple Creek was not a party to the prior litigation and the protective order limits the spillover effect of the Draft Report. Therefore, Maple Creek does not have the Draft Report for purposes of discovery in this case. Accordingly, at this stage of the litigation, this Court's focus is to determine whether the Draft Report is relevant to Maple Creek's bad faith claim. The Court reserves the question of admissibility for another day.

State Farm argues that the Draft Report is irrelevant to whether State Farm breached a duty of good faith towards Maple Creek. [Dkt. 102 at 19]. Under Indiana law, a duty of good faith and fair dealing exists requiring an insurer to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure the insured into a settlement of his claim. *White v. State Farm Mut. Auto. Ins. Co.*, 709 N.E.2d 1083 (Ind. Ct. App. 1999).

In support, State Farm cites to *White*, which involved a plaintiff's bad faith claim against State Farm for not paying a portion of her chiropractic bills. *Id.* at 1081. In upholding the trial court's grant of summary judgment in favor of State Farm on the bad faith claim, the court concluded that White failed to designate any evidence that State Farm violated its duty to deal with her in good faith. *Id.* at 1084. White cited to and attempted to rely upon *State Farm Mutual Auto. Ins. Co. v. Mortell*, 667 N.E.2d 192 (Ind. Ct. App. 1996), which upheld the IDOI's order finding State Farm violated the Unfair Competition & Deceptive Trade Practices Act by paying chiropractic claims at a significantly lower rate than similar non-chiropractic claims. *Id.* at 1083. The court in *White* stated that "there is no evidence that State Farm's lack of guidelines or procedures to ascertain when to submit an insured's claim to a review agency resulted in a breach of the duty of good faith." *Id.* at 1084. According to State Farm, *White* held that general

allegations of a lack of standards or failure to train personnel contained in examinations reports are insufficient as a matter of law and not relevant to bad faith claims. [Dkt. 102 at 20].

This Court, however, finds *White* distinguishable. First, as Maple Creek points out, the plaintiff in *White* had no connection to the examination discussed in *Mortell* because the examination in *Mortell* took place two years before White's claim. [Dkt. 99 at 13]. In *White*, the court concluded that evidence of past violations discussed in *Mortell*, were not *res judicata* requiring courts to find bad faith in all similar cases. *White*, 709 N.E.2d at 1084. Here, however, the Draft Report directly involves the 2006 hailstorm giving rise to this litigation and not some unconnected past violations. Second, the Draft Report's conclusions go beyond State Farm's lack of guidelines or procedures, as discussed in *White*, and are relevant to at least three of the elements necessary for a bad faith claim: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; and (3) deceiving the insured. Third, *White* involved the use of a report as evidence in a summary judgment proceeding. As previously discussed, this Court is not addressing the Draft Report's admissibility.

Lastly, this Court does not read *White* as broadly as State Farm. *White* determined that no evidence existed that a lack of guidelines or procedures resulted in a breach of the duty of good faith owed to the plaintiff. *White* does not foreclose the possibility that a lack of guidelines or procedures could result in, or at least be evidence of, a breach of the duty of good faith. In conclusion, the Court finds that the Draft Report is relevant to Maple Creek's bad faith claim and therefore should be produced.

## III. Conclusion

For the reasons discussed above, the Court **GRANTS** Maple Creek's Motion to Compel. [Dkt. 87].

Dated: 01/04/2012

Distribution List:

Dennis F. Cantrell
CANTRELL, STRENSKI & MEHRINGER, LLP
dcantrell@csmlawfirm.com

Brad A. Catlin
PRICE WAICUKAUSKI & RILEY
bcatlin@price-law.com

Trischa Snyder Chapman
BAKER & HOSTETLER LLP
tchapman@bakerlaw.com

Joseph E. Ezzie
BAKER & HOSTETLER LLP
jezzie@bakerlaw.com

Mark A. Johnson
BAKER & HOSTETLER LLP
mjohnson@bakerlaw.com

Jamie Ranah Kendall
PRICE WAICUKAUSKI & RILEY
jkendall@price-law.com

Rand L. McClellan
BAKER & HOSTETLER LLP
rmcclellan@bakerlaw.com
Christopher Allan Moeller
HAUSMANN-MCNALLY, S.C.
cmoeller@mcinjurylaw.com

James Piatt
PRICE WAICUKAUSKI & RILEY
jpiatt@price-law.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Tara Stapleton Lutes
CANTRELL STRENSKI & MEHRINGER, LLP
tlutes@csmlawfirm.com

Robert James Tucker
BAKER & HOSTETLER LLP
rtucker@bakerlaw.com

Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
jwilliams@price-law.com